By the Court.—O’Gorman, J.
The contention in this case is as to the validity of a claim made by the plaintiff to the exclusivé use of a shed attached to the bulkhead between piers 40 and 41, N orth River.
On April 26, 1876, the Board of the Department of Docks passed the following resolution : “ Resolved : That the Central Railroad of New Jersey be, and they are hereby informed, that this department will grant a lease to the said corporation, for a term of ten years, of the northerly side of a pier to be built, wholly or in part, upon the premises now occupied by pier 48, N. R., for the purpose of erecting thereat a ferry rack, as soon as the pier shall be constructed or completed by this department, in conformity with the new plans adopted, or to be adopted, for the improvement of the water front, at a yearly rent of $7,500, but it is understood that the said corporation shall have no right to the use of any portion of the surface of said pier ; the department reserves the right to rebuild the said pier, and the bulkhead wall contiguous thereto, at such time as it may by said department be deemed expedient; and further, that until the department shall take possession of *255 the said pier 48, for the purpose of re-building, the said Central Railroad of New Jersey, shall pay to this department for the use of the whole of the L, on the north side of said pier, and for the use of the water front adjacent to said north side, for ferry purposes, rent at the rate of $5,000 per annum ; but it is understood that the said corporation shall have no right, during such period, to the use of any portion of the surface of the said pier, excepting that of the said L, provided that the said Central Railroad of New Jersey,< shall within five days after receipt of this notice file in this office, its acceptance in writing of the terms hereof, and agree to execute a lease containing the usual covenants and conditions, and in conformity with the terms herein set forth, for the northerly side of the pier when so rebuilt, and ready for occupancy.”
A formal written acceptance of this resolution was, by the said Central Railroad of New Jersey, duly filed in the office of the Department of Docks.
One of the main questions to be determined, is what property, rights or privileges were granted to the said Central Railroad, by reason of this resolution. It consists of two parts, each part providing for a condition of affairs special and differing from that provided for in the other part, each part separate and distinct from the other. In the first part, the resolution makes provision for a lease to be executed after the occurring of an event, 11 in futuro,” that is to say, after the construction and completion by the department, of a pier to be built by'them, wholly or in part, on the premises then occupied by pier 48, North River ; after the occurrence of which event, the department was to grant a lease to the Central Railroad for a term of ten years, of the northerly side of such pier, as so built, for the purpose of erecting thereat a ferry rack. The yearly rent for the said northerly side of said pier was to be $7,500, the Central Railroad to have no right to use any portion of the surface of the pier. Until the construction and completion of this intended pier, these provisions of the resolution could not come into effect. From the terms of this part of *256 the resolution, it is sufficiently clear that all that was intended to pass by the lease, when executed, was the right to the exclusive use of the north side of the proposed new pier, only in so far as was necessary for the putting up and using, ferry racks alongside of said pier, which exclusive use would necessarily prevent the public from using that side of the pier for shipping purposes, for instance, for making ships fast to it, or for any other such ordinary public use of a pier; and deprive the city of the emoluments derivable therefrom.
The second part of the resolution applied to a different state of things, and made provision for the relations between the said department and the Central Railroad in the interval of time before the department should take possession of said pier 48, for the purpose of re-building, etc.
During that interval, the Central Railroad was to pay for the use of the whole of the “ L” on the northerly side of pier 48, and for the use of the water front adjacent to said north side, for ferry purposes, rent at the rate of $5,000 per annum, the Central Railroad having, during that interval, no right to use any portion of the surface of the pier, excepting of the said “ L.” This part of the resolution applied only to pier 48 as it then stood, and not in any respect to the pier to be put in its place ; and by the terms of this resolution, the Central Railroad acquired no right to erect on the north side of pier 48, or anywhere else, a ferry-house, or other structure necessary for the use of a ferry. The resolution did not in either of its parts make any provision whatever for the use by the Central Railroad of any portion of the bulkhead, or slip north of the north side of the new pier when completed.
On November 1, 1880, the said Central Railroad having become insolvent, and fallen into the hands of a receiver, he assigned to the Cunard Steamship Company all their rights and.privileges under or by virtue of the said resolution of the Dock Department of April 26, 1876 ; and also any lease made by said department to the Central Railroad, pursuant to said resolution'. The Central Railroad further, *257 through their receiver, covenanted to assign to the plaintiff the right of the Central Railroad in and to the water privileges referred to in said resolution. The Dock Department had never, in fact, executed any lease in pursuance of their said resolution.
On November 10, 1880, the Dock Department passed the following resolution :
“ Whereas this board under a resolution adopted on April 26, 1876, agreed to grant to the Central Railroad Company of New Jersey, a lease of the northerly side of a pier to be built wholly or in part upon the side of a pier then known as pier 48, North River, for a period of ten years from the completion thereof, at an annual rent of $7,500, for t,he purpose of erecting thereat a ferry rack, but with no right to the use of any portion of the surface of said proposed pier.
‘ ‘ And whereas since that date the said proposed pier has been erected, and is now known as pier new 40, North River, and has been occupied since the date of its completion, say May 1, 1879, by the said company.
1 ‘ And whereas, the receiver of the said company has this day advised this board in writing that, the court has authorized the assignment of the interests of said company in the above referred to lease to the Cunard Steamship Company, Limited.
“ And whereas, the said receiver has also this day asked in writing for .the consent of this board to such an assignment, and to allow the name of said steamship company to be substituted for that of the railroad company in any lease made pursuant to the aforementioned resolution of April 26, 1876, therefore,
“ Resolved: That the board governing the Department of Docks assents to such substitution, and hereby agrees to grant a lease of the premises referred to above, and now known'as the northerly side of pier new 40, North River, but with no right to the use of any portion of the surface of said pier, for a term of eight years and six months, from November 1, 1880, to the Cunard Steamship Company, *258 Limited, at an annual rent of $7,500, payable quarterly in advance, and to contain a covenant for a renewal term of ten years, at an annual rent of $7,625, provided that the said steamship company shall, within ten days from the receipt hereof, file in this office, its acceptance in writing of the terms hereof, and agree to execute a lease containing the usual covenants and conditions, and in conformity with the terms herein set forth when notified so to do by this board.” Within the ten days specified in said resolution, the Cunard Steamship Company filed their acceptance in the office of the Department of Docks. The Cunard Steamship Company also, by letter, expressed their readiness to accept a lease of the northerly side of pier 40, upon the terms mentioned in said resolution, for a term of eight years, from November 1, 1880, at an annual rent of $7,625, with covenant of renewal.
The effect of these resolutions and this assignment, was to vest in the plaintiffs whatever right or license the Central Railroad had acquired to the use of the northerly side of pier 40, and to any lease to be made in pursuance of. the resolutions of April, 1876, by the Dock Commissioners. The plaintiffs, however, have acquired rights under the agreement between the Dock Department and themselves, set forth in the resolution of November 10, 1880, other and different from the rights assigned to them by the Central Railroad. By that agreement, they are entitled to a lease from that department directly to themselves of the northerly side of pier 40, from November 1, 1880.
They have expressed their readiness to execute that lease, and from November 1, 1880, they have paid rent for the same, and have been in full possession of the north side of pier 40, as provided for in said resolution.
The plaintiffs' claim, however, that in addition to the said use of said pier, they are also entitled to maintain and use a certain shed, set on piles, between piers 40 and 41, said shed "attached partly to the northerly side of pier 40, and partly to the bulkhead, and extending ninety-four feet north from the pier. This shed has been used by the *259 plaintiffs since November 1, 1880, in storing the cargoes of their ocean steamships, and it is admitted that the plaintiffs are owners of the shed itself.
On February 24, 1882, the Dock Department gave the plaintiffs notice to remove the shed, or that in default of their doing so, the department would remove it. The Cunard Steamship Company threatened to commence an action to restrain the Dock'Department, and the parties have now submitted to the court the following questions:
I. “ Have the said Cunard Steamship Company the right to maintain and use said shed during the period for which said injunction is asked for ?”
II. “ Should the injunction be granted?”
The claim of the Cunard Steamship Company to the use and occupation of this shed can find no support in the terms of the resolutions referred to, or either of them, and in order to understand the ground of their claim to the exclusive use of this shed, it is necessary to consider the facts on the subject as they appear in the case submitted to the court.
The erection of the shed came about in this way. On June 21, 1876, two months after the passage of the resolution of the Dock Department first referred to, and on which resolution the plaintiffs rely, the Dock Department, on the application of the Central Railroad, resolved as follows: “ That permission be and the same hereby is granted to the Central Railroad of New Jersey, to drive piles in the slip adjacent to the north side of pier 48, North River, and erect thereon a platform and ferry-houses, together with such other structures, racks, bridges, etc., as may be necessary for use of a first-class ferry, and now in the course of erection, provided that all the said improvements shall be constructed in conformity with the plans as approved by the engineer-in-chief of this department, and the work of completion shall be done under his supervision, and that the said buildings shall be subject to the regulations of the superintendent of buildings, as required by law.”
This resolution referred only to the slip adjacent to the old pier 48, as it then stood, and did not apply to the in *260 tended new pier 40, or to the slip adjacent to it when constructed ; and as the assignment By the receiver of the Central railroad to the plaintiffs does not in any way refer to this resolution of June, 1876, or to any rights the Central Railroad might have thereunder, the plaintiffs cannot claim,” and, as I understand, they do not claim any benefit under or by virtue of that resolution of June 31, 1876.
The Central Railroad never obtained a ferry franchise from the city, but after passage of that resolution they erected on the north side of the then existing old pier 48, and adjoining the bulkhead, a ferry-rack and structures, being a ferry-house, platform, etc.
This was done with the assent of the Dock Department, and these structures were used by said Central Railroad for ferry purposes until sometime in 1878, when their use of them for ferry purposes was discontinued; and since that time no ferry has existed there.
In 1878, the Dock Department entered upon this old pier 48, North River, and built the new pier 40, removed the old bulkhead farther west into "the river, filling in behind and making the present bulkhead. In making such changes, these buildings put up by the Central Railroad were taken down, but at their request thezeasterly front of the ferry-house, including the covered platform used by them, was temporarily moved by the Dock Department at its own expense, and placed on the new bulkhead. No resolution of the Dock Department was passed authorizing such action. These changes were completed in May, 1879. This easterly front of the former ferry-house and this covered platform, which were, when moved, set on piles in the slip, now form the shed, the right to use which is now claimed by the plaintiffs. These changes in the waterfront were completed by the Dock Department in May, 1879, and were in accordance with the general plan for the improvement of the water-front adopted by the Dock Department in compliance with the provisions of chapter 574, Laws 1871.
From the time of the adoption of that plan, no wharf, *261 pier, bulkhead, slip, etc., nor any wharf structure or superstructure could lawfully be laid out, built or rebuilt within the territory embraced in the plan, except in accordance with the plan (Id. ; New York City Consolidation Act, 276-7, §712).
This shed set on piles outside the ne\V bulkhead line adopted under the act, and extending over the water of the slip, was not in accordance with said plan, and the Dock Department had no authority to put it there, or to allow it to be put or maintained there. It was not a ferry-house or a structure used for any ferry purpose. No franchise for the operation of a ferry in that place had ever been procured by the Central Railroad, or by any one. The Dock Department had no authority to grant a ferry franchise. That power was vested exclusively in the Commissioners of the Sinking Fund ; and the Dock Department, in moving the remnant of the old ferry-house, which had been used without authority of law by the Central Railroad, to the new bulkhead on the north of the new pier 40, and in allowing it to project over the waters of the slip, acted in violation of the law. Having no right to erect such a structure, they had no right to permit it to be maintained and used by the plaintiffs exclusively. There is no resolution of that department permitting such use, and if it were claimed that their failure to object to such use may be regarded as a license, it was as a license revocable ; and the notice to the plaintiffs, of August 12, 1881, was a revocation.
On what ground then do the plaintiffs base their claim to the right to use this shed ? They do not base it on the resolution of the Dock Department, dated June 21, 1876, giving permission to the Central Railroad to drive piles in the slip, and to erect a platform, etc., for no right or privilege depending on, or arising out of that resolution, was assigned ’ to the plaintiffs, under the assignment to them from the Central Railroad, dated November, 1880, which was, in terms, confined to the rights and privileges which the Central Railroad acquired under the resolution *262 of the Dock Department, dated April 26, 1876. And, in fact, the plaintiffs do not make any claim under the resolution of June, 1876. Their contention, I understand, to be substantially this : The Central Railroad, under the resolution of April 26, 1876, acquired the right to a lease of the northerly side of the pier to be built in place of the then existing pier 48, for the purpose of erecting- thereat a feny rack, paying therefor the yearly rent of $7,500. This lease of the northerly side of said pier for ferry purposes, as they claim, carried with it by implication the right to erect and maintain, during the period covered by the resolution, such structures as are suitable for the running of a ferry at that point; and the shed in question is such a structure.
I have read the able and ingenious argument of the learned counsel for the plaintiffs, wdth the care and attention it so much deserves, without, however, being able to agree in the correctness of this proposition.
The subject of grants by implication was considered in the Charles River Bridge case (7 Pick. 344, 362).
It was said there by Wilde, J., to be “a sound and wholesome rule of construction to interpret public grants most favorably to the public interest, and they are not to be enlarged by doubtful implication.” In the same case, Martin-, J., says, “ no distinct thing or right will pass by implication. The words should be construed in their most natural and obvious sense ; and whatever is necessary for the enjoyment of the thing granted will be implied in the grant.” When the use of a thing is granted, everything is granted by which the grantee may have and enjoy such use (3 Kent Com. 421; Langdon v. Mayor, 93 N. Y. 151). A grant of the use of a thing which is accessory to the use of the principal thing granted, may, sometimes, be implied in the grant of the principal thing ; but the grant of the principal thing itself will not be implied from the special grant of the thing which is accessory. The greater may carry with it the less, but -not vice versa. For instance, a grant of land may carry with it, by implication, a right of way, without which the land granted would be *263 inaccessible; but a grant of the right of way would not carry with it a grant of the land.
In the case at bar, the thing granted was the use of the side of the pier for erecting a ferry rack, a thing accessory to the use of a ferry. The franchise or privilege for the use of the land required for the erection of a ferry-house, could not.be regarded as included by implication in that grant. The only thing granted was the side of the pier, and for the exclusive use of that, the rent was to be paid.
The use of the land necessary for ferry purposes, with license to erect ferry-houses, etc., thereon, was the subject of a different grant, given by a different resolution (the resolution of June, 1876) ; and that resolution would have been unnecessary, if the rights or license conferred on the Central Railroad by that resolution had been already conferred by the previous resolution of April 26, 1876. But the Dock Department had no power to grant either ferry franchises, or the exclusive use of the bulkhead or pier, or any part thereof, to persons running a ferry, without a ferry franchise, and the resolution of June, 1876, cannot be held to grant, by implication, a license which it was beyond the power of the department to grant, and which is a clear violation of law.
For these reasons, I am of the opinion that the Central Railroad, took by the resolution of April, 1876, no right or license to the exclusive use of any part of the bulkhead for any purpose, or any right or license to build thereon, or on piles driven into the waters of the slip, or to encroach on said waters by any structure overhanging the same. This conclusion, if correct, disposes of the proposition on which the plaintiffs’ argument mainly depends.
The rights which the plaintiffs now enjoy, to use the north- side of pier 40, for other than the erection of "a ferry rack, depend, not on the assignment from the Central Railroad, but on the direct agreement made, on November 10, 1880, by the Dock Department with the plaintiffs for a lease to them ; and plaintiffs under that agreement are entitled to use that side of the pier for any and all purposes *264 that may be lawful. But under no resolution or agreement either in terms or by necessary implication, have they acquired any right to maintain or use the shed in question.
Entertaining these views, the conclusion seems inevitable that the first of the questions submitted to the court should be answered in the negative. The Cunard Steamship Company have not the right to maintain and use the shed during the period for which the injunction is asked.
As to the second question, viz.: should the injunction be granted 1 the plaintiffs argue, that whether the shed does or does not constitute an unlawful structure, the Dock Department have no power to remove it.
It is not necessary at present to examine this question.
A plaintiff appealing to a court of equity for protection in the use of real estate, to which he has not an undoubted right, can not be surprised if the court decline to ' exercise its extraordinary powers in his behalf, but leaves him to assert his rights, if he has any, in an action at law; and there is no reason to apprehend that in this instance, the plaintiffs cannot obtain compensation by way of damages for any violation of their legal rights which they can prove that they have sustained.
The second question is, therefore, answered in the negative.
The injunction asked for should not be granted.
Sedgwick, Ch. J., and Truax, J., concurred.